# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KENNETH STEVEN DAYWITT, | Case No. 23-CV-2111 (KMM/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| JODI HARPSTEAD, Commissioner MN DHS; and NANCY JOHNSTON, MSOP Executive Director, sued in their individual and official capacity, | |
| Defendants. | |

Plaintiff Kenneth Steven Daywitt, a client of the Minnesota Sex Offender Program ("MSOP"), alleges that MSOP has violated and continues to violate his constitutional rights through its implementation of a "tier" system whereby MSOP clients earn or lose privileges at the facility through their behavior. Mr. Daywitt did not pay the filing fee for this matter, instead applying for *in forma pauperis* ("IFP") status, *see* Dkt. No. 2, and that IFP application is now before the Court for review.

This Court has reviewed the IFP application and concludes that Mr. Daywitt qualifies financially for IFP status. That said, an IFP application will be denied, and an action will be dismissed, when an IFP applicant has filed a complaint that fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam). Because Daywitt's complaint fails to state a claim on which relief may be granted, the Court recommends that his IFP application be denied and that this action be dismissed without prejudice.

1

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Before turning to the specifics of Mr. Daywitt's complaint, a few words regarding MSOP are necessary for putting the pleading in context. Persons in the State of Minnesota found to be sexually dangerous or sexually psychopathic are subject to indefinite civil commitment at MSOP. *See* Minn. Stat. § 253D.01 et seq. An individual whom the state believes should be committed is entitled to substantial judicial process prior to the commitment. *See* Minn. Stat. § 253D.07. And an individual who believes himself to no longer be dangerous is entitled to procedures for determining whether that person is entitled to a reduction in custody level or removal from MSOP entirely. *See* Minn. Stat. § 253D.27. The procedures set out by state law both for initiating civil commitment and for determining whether a detained person should be subject to release from custody have been

found to be adequate for purposes of the Due Process Clause. *See Karsjens v. Piper*, 845 F.3d 394, 408-09 (8th Cir. 2017).

Clients of MSOP, naturally, are subject to restrictions on their daily living activities. But not every MSOP client is subject to the same restrictions. For example, clients subject to a Behavioral Expectation Report ("BER") are generally afforded fewer privileges than clients not subject to the BER, with more severe violations of facility rules being sanctioned with more stringent restrictions. MSOP clients are sometimes entitled to due process before issuance of a BER and sometimes not, depending upon whether the restrictions that MSOP seeks to impose following the BER amount to the deprivation of a protected liberty or property interest of the client. *See Davenport v. University of Arkansas Bd. of Trustees*, 553 F.3d 1110, 1114 (8th Cir. 2009) ("To establish a violation of procedural due process, a plaintiff must show that he has been deprived of a constitutionally protected life, liberty or property interest."). Whether an MSOP client has a protected liberty or property interest in avoiding a particular restriction turns on whether a deprivation of that interest amounts to an atypical and significant hardship within the ordinary context of being civilly confined. *See, e.g.*, *Benson v. Piper*, No. 17-CV-0266 (DWF/TNL), 2019 WL 1307883, at *6 (D. Minn. Mar. 22, 2019) (collecting cases). If the restriction is not an atypical and significant hardship compared to the expectations of civil confinement, then MSOP officials may employ that deprivation at any time without affording the affected person any further procedural protections. Thus, for example, an inability to maintain employment is an ordinary incident of civil commitment, and therefore courts have found that clients are not entitled to due process prior to losing their job at the facility. *See, e.g.*, *Dean v. Johnston*,

No. 19-CV-3186 (JRT/LIB), 2020 WL 7249818, at *9 (D. Minn. July 23, 2020) (collecting cases).

Whether the various impositions placed on MSOP litigants following BERs and other disciplinary events amount to atypical and significant hardships has been litigated extensively.,It seems each individual restriction shas been placed under a judicial microscope at one point or another. *See, e.g.*, *Dean v. Johnston*, No. 19-CV-3186 (JRT/LIB), 2021 WL 3667265, at *4 (D. Minn. Aug. 18, 2021) (finding that possession of an Xbox gaming system is not a protected property interest in the context of civil confinement). But these questions have largely become moot with respect to the BER policy, as the grievance procedure employed by MSOP for adjudicating disciplinary disputes related to BERs has been found to be adequate for purposes of the constitutional guarantee of due process. *See Karsjens v. Harpstead*, No. 11-CV-3659 (DWF/TNL), 2022 WL 542467, at *14-15 (D. Minn. Feb. 23, 2022). In other words, even if the loss of a privilege following issuance of a BER amounts to the loss of a protected interest, MSOP's BER policy provides sufficient procedural safeguards to permit MSOP to carry out that sanction.

The pleading in this matter does not concern BERs directly, but rather a parallel disciplinary system established by MSOP that in this case is interconnected with BERs. According to Daywitt, MSOP in 2017 implemented a "Tier Level" policy in which clients are assigned to different tiers of privileges depending upon their disciplinary history and other related factors. *See* Compl. at ¶¶ 12-14 [Dkt. No. 1]. At Tier 5, the least restrictive tier, clients may place monthly outside food orders, have unrestricted access to

4

multipurpose areas, are not subject to a curfew, and are afforded extra visiting privileges. *Id*. at ¶ 23. At Tier 1, the most restrictive tier, clients have access to recreational areas and the legal computer only during times scheduled by MSOP staff, lose access to outside food and vending machines, and are curtailed in their ability to move about the facility and visit clients in other housing units. *Id*. at ¶ 15.

All clients were placed in Tier 3 at the outset of the program, and Mr. Daywitt seems to have spent most of his time at MSOP since implementation of the Tier System in Tier 3. *See* Compl. at ¶ 24. On three occasions, however, Mr. Daywitt has been placed in Tier 2 "because of receiving major BER's [sic] for various behaviors." *Id*. Mr. Daywitt alleges that the additional impositions placed upon him during his time in Tier 2 amounted to deprivations of protected liberty interests; that MSOP was therefore required to provide him with due process before moving him to Tier 2 (or before demoting any MSOP client down a tier); and that the procedures employed by MSOP are inadequate for purposes of the Due Process Clause.

The complaint in this matter can be reasonably interpreted as raising two distinct procedural due process claims related to the Tier Level policy. The first claim is that MSOP officials have already violated his constitutional rights by previously moving him from Tier 3 to Tier 2 without adequate process. But in every instance that Mr. Daywitt was demoted in tier, it was the result of (by his own admission) having received a major BER. But as described above, regardless of whether MSOP clients are *entitled* to due process before issuance of a BER, it has been judicially determined that MSOP clients in fact *receive* due process under the policies employed at MSOP when a BER is issued. *See Karsjens v.*

5

*Harpstead*, No. 11-CV-3659 (DWF/TNL), 2022 WL 542467, at *14-15 (D. Minn. Feb. 23, 2022). Mr. Daywitt himself was a member of the class of MSOP clients that litigated this due process claim all the way to trial. Having already litigated the issue of whether the BER policy satisfied the constitutional guarantee of due process, and having already lost, Mr. Daywitt cannot litigate that issue again. *See Daywitt v. Minnesota Dep't of Human Services*, No. 18-CV-3430 (DWF/ECW), 2023 WL 5515980 (DWF/ECW) (applying claim preclusion to other claims brought by Mr. Daywitt that had already been adjudicated in *Karsjens*). The procedures employed at MSOP were sufficient to permit issuance of a BER and concomitant loss of privileges under both the BER policy and other ancillary policies.[1]

    Mr. Daywitt's second due process claim related to the Tier Level policy is broader than the first in that it challenges the Tier Level policy on its face rather than how it has thus far been applied to him. To this point, Mr. Daywitt has been demoted in tier only due to having received major BERs, but an MSOP client can (it seems) be demoted in tier for reasons other than issuance of a BER—and if the client is demoted in tier for reasons other than having received a BER, then the client would not receive the procedural protections that the BER policy guarantees, since those procedures are tied to the issuance of a BER. If the Tier Level policy foreseeably threatens to deprive MSOP clients of due process, Mr. Daywitt need not wait until such a deprivation occurs to attack the policy, as the threat

---

[1] That the policy calls for certain procedures before sanctions are issued is not by itself enough to satisfy due process concerns—MSOP also must follow those procedures. But Mr. Daywitt does not contend that MSOP officials failed to follow the relevant policies.

posed to his constitutional rights by the Tier Level policy would be more than simply conjectural or hypothetical. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Still, though, Mr. Daywitt is required to plead a plausible claim that the Tier Level policy on its face violates the due process rights of MSOP clients. At the pleading stage, a viable due-process claim must include two things: (1) Plausible allegations that the policy (or other governmental action) deprives the claimant of a protected liberty interest, and (2) plausible allegations that the policy fails to afford sufficient procedural protections before depriving the claimant of those protected liberty interests. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

This Court is skeptical that the first element has been pleaded adequately and is certain that the second element has not. With respect to the first element, the conditions described by Mr. Daywitt—even at the most restrictive tier of the Tier Level policy—are not obviously more restrictive than what might be expected as part of the ordinary incidents of being civilly committed. Limitations on recreation time that fall short of total curtailment and restrictions on ordering certain food items have generally been found not to implicate protected liberty interests. *See Flores v. Moser*, No. 16-CV-1860 (ADM/KMM), 2019 WL 2016789, at *7 (D. Minn. Jan. 7, 2019). Even temporary placement of MSOP clients in *isolation*—a condition far more restrictive than any contemplated under the Tier Level policy as described in the complaint—have been found not to implicate a protected liberty interest. *See Holly v. Anderson*, No. 04-CV-1489 (JMR/FLN), 2008 WL 1773093, at *8 (D. Minn. Apr. 15, 2008). And if the sanctions imposed as a result of the Tier Level policy

7

do not implicate protected liberty or property interests, then MSOP clients are not constitutionally entitled to any procedures before those sanctions are imposed.

But even assuming that a protected liberty interest is implicated by the Tier Level policy, Mr. Daywitt runs into a bigger problem: Nowhere does he plausibly allege that the procedures established by the Tier Level policy prior to demotion to a lower tier are inadequate to protect the rights of MSOP clients. Mr. Daywitt acknowledges that the Tier Level policy provides a grievance process through which clients can challenge a demotion. Throughout the entire complaint, there is only one concrete respect in which Mr. Daywitt alleges that this grievance process is inadequate: MSOP officials, rather than "an outside entity," are responsible for adjudication of appeals. Compl. at ¶ 28. But the contention that internal administrative proceedings are *per se* inadequate to protect due process rights is wholly unsupported in the case law. *See Karsjens*, 2022 WL 542467, at *14 (finding "no authority for Plaintiffs' apparent claim that . . . an external BER appeal process" was required for due process); *Wolff v. McDonell*, 418 U.S. 539, 563-68 (1974) (describing due-process requirements for prison disciplinary proceedings). If MSOP's procedures under the Tier Level policy are inadequate in some other way other than that MSOP conducts those procedures, then Mr. Daywitt has not identified it. He must do so to state a viable claim for relief under the due process clause.

The procedural due process claim described above is the heart of Mr. Daywitt's complaint, but he does raise (or suggest)[2] a handful of other claims that can be dealt with more briefly:

First, Mr. Daywitt contends that any limitations beyond the least restrictive conditions necessary to effect the therapeutic purposes of his civil detention amount to unlawful punishment. *See* Compl. at ¶¶ 38, 50-59. This claim, like the claim related to the constitutionality of the BER policy, was resolved by *Karsjens*, and Mr. Daywitt therefore is precluded from litigating it again. *See Karsjens v. Harpstead*, 74 F.4th 561, 568-72 (8th Cir. 2023). In any event, the claim is meritless in addition to being precluded. "MSOP and its officials are permitted to employ regulations, including disciplinary regulations, that are reasonably related to 'legitimate therapeutic or institutional interests.'" *White v. Dayton*, No. 11-CV-3702 (NEB/DJF), 2023 WL 21918, at *11 (quoting *Ivey v. Mooney*, No. 05-CV-2666 (JRT/FLN), 2008 WL 4527792, at *6 (D. Minn. Sept. 30, 2008)). Mr. Daywitt is not constitutionally entitled to the lowest quantum of restrictions necessary to effectuate his treatment.

Second, Mr. Daywitt contends that MSOP cannot place greater restrictions on other clients without running afoul of the Equal Protection Clause. *See* Compl. at ¶ 3. "The Equal Protection Clause demands that similarly situated individuals be treated alike." *New Doe Child #1 v. United States*, 901 F.3d 1015, 1027 (8th Cir. 2018). Mr. Daywitt appears to

---

[2] As a formal matter, the complaint presents three counts for relief, but there is substantial overlap between those counts (each of which, directly or indirectly, raises a due process claim), and other claims can be found scattered outside of the three counts that conclude the pleading.

believe that all MSOP clients are "similarly situated" insofar as they are all detained at MSOP, and therefore that any distinction in restrictions placed on clients *ipso facto* amounts to an Equal Protection Clause violation. But—as Mr. Daywitt has been explained before—not all MSOP clients are similarly situated for all purposes.[3] *See Daywitt v. Harpstead*, No. 21-CV-1848 (WMW/DTS), 2022 WL 2374133, at *6 (D. Minn. June 30, 2022). An MSOP client found to have violated MSOP rules and who is therefore demoted in tier is not similarly situated with an MSOP client who has been in full compliance with MSOP's rules, at least for purposes of applying a disciplinary policy. *See Klinger v. Dep't of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994) ("The similarly situated inquiry focuses on whether the plaintiffs are similarly situated to another group for purposes of the challenged government action.").

Third, Mr. Daywitt contends that application of the Tier Level policy amounts to double jeopardy because an MSOP client demoted in tier level is often punished twice—once upon receiving a BER, and again upon being demoted in tier. *See* Compl. at ¶ 29. But the Double Jeopardy Clause "protects only against the imposition of multiple *criminal* punishments for the same offense . . . ." *Hudson v. United States*, 522 U.S. 93, 99 (1997). Never was Mr. Daywitt, at least so far as the pleading reflects, subjected to the possibility of criminal sanction for the rules violations that lead to his BERs and tier demotions. Far

---

[3] Even if all MSOP clients were to be regarded as similarly situated, Mr. Daywitt would be required to plausibly allege that the differential treatment created by the Tier Level policy was not rationally related to a legitimate government objective. *See Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006). The complaint does not include allegations from which a factfinder could conclude that the policy is not rationally related to the legitimate governmental objective of maintaining order at MSOP.

from being placed in double jeopardy, Mr. Daywitt has not even been placed in single jeopardy as a result of the Tier Level policy or any other MSOP policies.

Finally, Mr. Daywitt contends that Minnesota Administrative Rule 9544.0060, subp. 2(P)-(Q) prohibits the kind of incentive structure created by the Tier Policy. *See* Compl. at ¶ 30. Even assuming that is true, though, a violation of state rules is not the same thing as a violation of federal law, and it is a violation of federal law that is needed to sustain a claim for relief under 42 U.S.C. § 1983. Rule 9544.0060 may provide the basis for a claim arising under state law, but even if so, the Court would lack original subject-matter jurisdiction over that claim, as Mr. Daywitt does not allege that the parties are of diverse citizenship. Nor may the Court exercise supplemental jurisdiction over the claim, as each of Mr. Daywitt's federal-law claims are meritless. *See Hervey v. County of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2006) (instructing district courts not to exercise supplemental jurisdiction over state-law claims where, as recommended here, all federal-law claims are dismissed prior to trial). To the extent that any other state-law claims might reasonably be imputed to the complaint, the same would be true there as well.

This Court recommends that this action be dismissed without prejudice in its entirety—the federal-law claims for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and the state-law claims for lack of jurisdiction.

## RECOMMENDATION

Based on the foregoing, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. This matter be **DISMISSED WITHOUT PREJUDICE** as follows:

11

      a.    All federal-law claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

      b.    All state-law claims be dismissed for lack of jurisdiction.

2.    The application to proceed *in forma pauperis* of plaintiff Kenneth Steven Daywitt [Dkt. No. 2] be **DENIED**.

Dated: September 15, 2023

    *s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).