UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

KENNETH STEVEN DAYWITT,

    Plaintiff,

v.

JODI HARPSTEAD, Commissioner MN
DHS; and NANCY JOHNSTON, MSOP
Executive Director, sued in their
individual and official capacities;

    Defendants.

No. 23-cv-2111 (KMM/JFD)

**ORDER**

---

    Plaintiff Kenneth Steven Daywitt is subject to involuntary civil commitment at the Minnesota Sex Offender Program ("MSOP") facility in St. Peter, Minnesota. He brought this action under 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights through their implementation of a "tier" system that determines the level of privileges within the facility each detainee is permitted. On September 15, 2023, United States Magistrate John F. Docherty issued a Report and Recommendation ("R&R") recommending that Mr. Daywitt's complaint be dismissed for failure to state a claim. [Doc. 3]. On September 28, 2023, Mr. Daywitt filed timely objections to the R&R. [Doc. 4.]

    The Court reviews *de novo* any portion of the R&R to which specific objections are made. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b). In the absence of objections, the Court reviews the R&R for clear error. *Nur v. Olmsted County*, 563 F. Supp. 3d 946, 949 (D. Minn. 2021) (citing Fed. R. Civ. P. 72(b) and *Grinder v. Gammon*, 73 F.3d 793, 795

1

(8th Cir. 1996) (per curiam)). District court judges "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Because Mr. Daywitt is self-represented, his objections are entitled to a liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Having carefully reviewed the R&R, the Court agrees with its conclusion that the complaint fails to state a claim upon which relief can be granted.

I.  **The Complaint and R&R**

   *The Complaint*

Mr. Daywitt's complaint challenges MSOP's adoption of a "Client Tier Level System" that he argues violates his constitutional rights of due process and equal protection. Before 2017, MSOP did not have a "tier" system that governed the privileges available to those detained at MSOP facilities. In October 2017, MSOP adopted the Tier Level policy, a five-level system that either adds or reduces an individual's privileges and access to locations within the facility. Originally, with limited exceptions, all MSOP patients[1] were placed on Tier Level 3.

Tier 1 is the most restrictive. An MSOP patient on Tier 1 must be escorted by staff to and from all places and is not offered any unscheduled recreation times. Tier 1 patients cannot open electronic doors, use the legal computer when they choose, have therapeutic unit-to-unit visits, use vending machines, or place outside food orders. Tier 1 patients

---

[1] Mr. Daywitt's complaint refers to the civilly committed individuals confined at MSOP as "patients" and "clients." The Court uses the term "patient" in this Order.

have a 9:00 p.m. curfew and restrictions on interactions with peers. Tier 1 restrictions last for a minimum of 30 days before a patient can apply to advance to Tier 2 status.

Tier 2 status patients have somewhat less restrictive conditions of confinement than Tier 1 patients. For example, they can move about the facility without a staff escort, but they cannot participate in unscheduled recreation. They are also prohibited from opening electronic doors, have restricted access to the legal computer, and a 9:00 p.m. curfew. Tier 2 status must last for a minimum of 60 days before a patient can apply to advance to Tier 3.

A patient can only advance to Tier 3 from Tier 2 if the patient has not received any disciplinary reports known as Behavioral Expectation Reports ("BER"), completes an application, presents the application in a community meeting, and receives the support of their unit team. On Tier 3, a patient can open electronic doors, is permitted unit-to-unit therapeutic visits, can use the vending machines, and is allowed to receive outside food orders. Tier 3 patients are allowed to have an individual garden plot, own a personal gaming system, receive vocational programming outside their unit, and have unlimited access to a legal computer. They may also remain out of their rooms until 10:00 p.m. Tier 4 patients have progressively greater privileges than Tier 3 patients, and Tier 5 patients have greater privileges still. Patients must satisfy additional criteria at each step to be eligible to advance to Tiers 4 and 5.

Mr. Daywitt was initially placed on Tier 3, but since he arrived at St. Peter, he has been returned to Tier 2 status three times because he has received major BERs for various behaviors.

Mr. Daywitt asserts that there are several flaws with the Client Tier Level policy. Reasonably construed, his complaint alleges the following shortcomings:

- The Policy violates Mr. Daywitt's Fourteenth Amendment right to equal protection as those to whom he is similarly situated;
- The Policy violates Mr. Daywitt's Fourteenth Amendment right not to be deprived of liberty without due process of law;
- The Policy is unconstitutionally punitive, not therapeutic in nature;
- The Policy lacks a bona fide appeal process because appeals are not handled by someone outside of MSOP;
- The Policy subjects a patient to double jeopardy by first punishing the patient with a BER and then subjecting them to tier reductions based upon the BERs received and imposing greater restrictions on them as a result;
- The Policy violates Minnesota Rules § 9544.0060.

### *The R&R*

Mr. Daywitt did not pay the filing fee, but instead sought leave to proceed *in forma pauperis*. Consequently, Judge Docherty screened his complaint to determine whether it fails to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). First, Judge Docherty correctly articulated the standard for reviewing a complaint to determine whether it states a claim. Next, he discussed the context for the R&R, including a brief summary of how persons come to be civilly committed at MSOP facilities and a discussion of the general restrictions on MSOP patients' daily living

activities that are incidental to their confinement. Judge Docherty explained the BER system and how patients who have received BERs are afforded fewer privileges than patients who are not subject to a BER. And he noted that due process is required only in those instances when MSOP imposes restrictions based on BER that amount to the deprivation of a protected liberty or property interest.

Then Judge Docherty turned to Mr. Daywitt's complaint and noted that it does not concern BERs directly, but instead challenges MSOP's Tier Level Policy. The R&R recounts the complaint's allegations about the restrictions that patients experience at various tiers and that all clients were initially placed in Tier 3 when the Policy was introduced. Judge Docherty further described how Mr. Daywitt alleges that he has been demoted to Tier 2 based on his receipt of major BERs during his commitment.

Finally, Judge Docherty carefully construed the complaint to determine the precise claims Mr. Daywitt appeared to be raising, and identified the claims listed above. But Judge Docherty found that the complaint failed to adequately assert any viable claims under federal law and that his state-law claims should be dismissed for lack of jurisdiction.

With respect to the procedural due process claims, the complaint alleges that the defendants have already violated Mr. Daywitt's rights by moving him from Tier 3 to Tier 2 on several occasions, without providing adequate procedural protections. But Judge Docherty found that Mr. Daywitt had received all the process that he was due because the complaint asserts that each of Mr. Daywitt's demotions in Tier status followed his receipt of a BER. As explained in the R&R, it has previously been held that the procedures

5

employed at MSOP when a BER is issued satisfy the requirements of the Due Process Clause. [Doc. 3 at 5–6 (citing *Karsjens v. Harpstead*, No. 11-cv-3659 (DWF/TNL), 2022 WL 542467, at *14–15 (D. Minn. Feb. 23, 2022).] Judge Docherty further noted that Mr. Daywitt does not allege that MSOP officials failed to follow the relevant BER procedures. [*Id.* at 6 n.1.] Accordingly, Judge Docherty found that Mr. Daywitt only lost privileges after receiving the procedural protections that the Constitution requires.

The second due process claim challenged the Tier Policy on its face rather than its application to Mr. Daywitt so far. Judge Docherty notes that the complaint alleges an MSOP patient can be demoted in Tier status for reasons other than receipt of a BER, and in such a case, he would not receive the procedural protections afforded to a person under MSOP's BER policies. Judge Docherty found that to adequately allege a claim under this theory, Mr. Daywitt would have to include a plausible allegation that the policy deprives him of a protected liberty interest and that the policy fails to afford sufficient procedural protections. [*Id.* at 7 (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006)).] Judge Docherty expressed doubt that Mr. Daywitt had adequately pled the first element but explicitly found that he had not plausibly alleged the second. With respect to the latter, Judge Docherty reasoned as follows:

> [E]ven assuming that protected liberty interest is implicated by the Tier Level policy, Mr. Daywitt runs into a bigger problem: Nowhere does he plausibly allege that the procedures established by the Tier Level policy prior to demotion to a lower tier are inadequate to protect the rights of MSOP clients. Mr. Daywitt acknowledges that the Tier Level policy provides a grievance process through which clients can challenge a demotion.

6

[*Id.* at 8.] The only procedural inadequacy with the Tier Policy identified in the complaint was the fact that the adjudication of appeals are not decided by an outside entity and are instead handled by MSOP officials. However, Judge Docherty found this failed to state a claim because an analogous challenge to the BER process was previously rejected in the *Karsjens* litigation. [*Id.* (citing *Karsjens*, 2022 WL 542467, at *14).]

Mr. Daywitt next alleged that defendants were prohibited from imposing any restrictions upon MSOP patients "beyond the least restrictive conditions necessary to effect the therapeutic purposes of his civil detention" because doing so would constitute unlawful punishment. He concluded that such a claim is foreclosed by the Eighth Circuit's decision in *Karsjens v. Harpstead*, 74 F.4th 561, 568–72 (8th Cir. 2023), and that it fails on its merits because MSOP officials do not violate the patients' constitutional rights by adopting disciplinary regulations reasonably related to legitimate institutional and therapeutic interests. [*Id.* at 9 (citing *White v. Dayton*, No. 11-cv-3702 (NEB/DJF), 2023 WL 21918, at *11 (D. Minn. Jan. 3, 2023)).]

With respect to the complaint's allegations that the defendants violated the Equal Protection Clause, Judge Docherty found that Mr. Daywitt's complaint appears to allege that all MSOP patients are similarly situated because they are all detained at MSOP, so none can be placed on greater restrictions than others. [*Id.* at 9–10.] This claim failed because courts have held that the individuals detained at MSOP facilities are not similarly situated for all purposes, and MSOP may properly treat those who violate institutional rules differently from those who do not. [*Id.* at 10 (citing *Daywitt v. Harpstead*, No. 21-

7

cv-1848 (WMW/DTS), 2022 WL 2374133, at *6 (D. Minn. June 30, 2022) and *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994)).]

Next, Judge Docherty examined Mr. Daywitt's claim that the Tier Policy violates the Double Jeopardy Clause because an MSOP client can receive dual punishment, first upon receiving a BER, and later upon being demoted from one tier to the next. But he found that these allegations fail to plausibly state a claim because the Double Jeopardy Clause only concerns multiple criminal punishments for the same offense, which are not at issue here. [*Id.* at 10–11.] Finally, Judge Docherty found that Mr. Daywitt's claim that defendants violated Minnesota Administrative Rule 9544.0060, subp. 2(P)–(Q) should be dismissed without prejudice for lack of jurisdiction because he recommended dismissal of all federal law claims. *Id.* at 11.

## II.  Discussion

Mr. Daywitt sets forth several objections to the R&R, which the Court has considered individually and as a whole. Ultimately, based on the required de novo review, the Court agrees with the R&R that the complaint fails to state any plausible claim for relief under federal law and that it is appropriate to decline to exercise jurisdiction over the supplemental state law claim.

First, Mr. Daywitt objects to Judge Docherty's conclusions with respect to the Tier Policy that recognize prior judicial approval of the BER procedures used by MSOP because the Tier Policy did not exist in 2015 when the BER conditions-of-confinement claims were tried in the *Karsjens* matter. The Tier Policy was introduced in October 2017. [Doc. 4 at 1–2.] However, this objection does not demonstrate any flaw in the

8

Magistrate Judge's reasoning. As explained in the R&R, Mr. Daywitt's complaint includes a backward-looking procedural due process claim that is clearly premised on the notion that Mr. Daywitt's prior demotions in Tier status occurred because he received a BER. As a result, the alleged deprivation of a protected interest that could give rise to a procedural due process claim was accompanied by procedural protections that have already been found sufficient. That is all the Due Process Clause requires in this context. *See Parrish v. Mallinger,* 133 F.3d 612, 615 (8th Cir.1998) ("A procedural due process claim focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures."). Dismissal of this claim is, therefore, appropriate.

Second, with respect to his broader facial due process claim, Mr. Daywitt asserts that the Tier Policy implicates constitutionally protected liberty and property interests. He references a property interest in a gaming controller and the significant restrictions imposed on the MSOP patients who are demoted to Tier 1 or Tier 2 status. [Doc. 4 at 2–4, 5–6.] This objection also misses the mark because, although Judge Docherty expressed skepticism regarding the sufficiency of the allegations, he did not recommend the dismissal of this due process claim for failure to adequately allege a constitutionally protected interest. Instead, Judge Docherty explained that this alleged due process violation required allegations of inadequate procedural safeguards, and Mr. Daywitt had failed to assert the absence of any adequate procedural safeguards in connection with the Tier Policy's alleged deprivations of privileges. Judge Docherty's skepticism that the

complaint failed to establish the first element does not affect his conclusion that the second element was not pled.

In a related objection, Mr. Daywitt asserts that his complaint *does* allege a failure of the Tier Policy to provide adequate procedures—namely, that an MSOP patient is unable to grieve a reduction in tier status to any reviewing authority outside the MSOP; instead, appeals are handled by MSOP personnel. [Doc. 4 at 6.] Again, the Court agrees with Judge Docherty's analysis with respect to this allegation and finds the complaint fails to state a claim in this regard. Mr. Daywitt argues that an institution like MSOP necessarily violates the constitution's insistence of due process any time the institution allows internal officials to handle disciplinary proceedings and appeals. Similar arguments have previously been rejected in the context of MSOP's BER procedures, and neither the complaint nor Mr. Daywitt's objections suggest that reliance on an internal appeals procedure would make the Tier Policy's process unconstitutional. *See Karsjens*, 2022 WL 542467, at *14 (finding that "the internal grievance procedure for BERs serves the MSOP's interests in preserving institutional order while providing Clients a multi-lawyered appeal option that facilitates due process in an efficient manner," and finding "no authority for Plaintiffs' apparent claim that *Bell* [*v. Wolfish*, 441 U.S. 520 (1979)] requires an external BER appeal process"). And Mr. Daywitt points to no cases from Minnesota or elsewhere that hold that appeals within a commitment institution are constitutionally inadequate.

Next, Mr. Daywitt objects to the recommendation that his equal protection claim be dismissed. He insists that "[a]ll patients at the MSOP are here for the same purpose,

treatment," and therefore, they cannot be treated differently in terms of which privileges they are permitted or denied. [Doc. 4 at 6.] These objections are overruled. As described in the complaint, the Tier Policy does not treat similarly situated individuals differently. In one iteration, it differentiates between those who have violated MSOP rules and received a BER and those who have not. In addition to BER-based demotion, an MSOP patient may allegedly be demoted in tier "for not meeting the expectations of [his] assigned tier status." [Doc. 4 at 2.] But a civilly committed individual who has been found to have violated institutional rules and received disciplinary sanctions as a result is not similarly situated to a civilly committed person who has complied with the rules. "The Equal Protection Clause requires state actors to treat similarly situated persons alike, but state actors do not run afoul of the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly." *Dean v. Johnston*, No. 19-cv-3186 (JRT/LIB), 2020 WL 6867409, at *3 (D. Minn. Nov. 23, 2020) (quoting *Am. Family Ins. v. City of Minneapolis*, 836 F.3d 918, 921 (8th Cir. 2016)). The Court finds that the complaint fails to state an equal protection claim.

The Court also is not persuaded by Mr. Daywitt's objections to the recommendations that his unlawful-punishment and double jeopardy claims should be dismissed. The Court agrees with Judge Docherty's conclusion that Mr. Daywitt's complaint fails to plausibly allege that the Tier Policy is not reasonably related to legitimate therapeutic or institutional interests. *White*, 2023 WL 21918, at *11. And because there is no criminal punishment alleged anywhere in the complaint, Mr. Daywitt has not stated a claim under the Double Jeopardy Clause. *Students for Sensible Drug*

*Policy Found. v. Spellings*, 523 F.3d 896, 899 (8th Cir. 2008) (the Double Jeopardy Clause "protects against the 'imposition of multiple *criminal*, punishments for the same offense, and then only when such occurs in successive proceedings'") (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)) (emphasis from *Hudson*).

Finally, the Court notes that in his objections, Mr. Daywitt suggests for the first time that because he is a frequent litigant, the defendants target him with BERs to retaliate against him for his litigation practices and, perhaps, to coerce his compliance with program rules. [Doc. 4 at 2.] Mr. Daywitt did not clearly allege a retaliation claim in his complaint, and the Court finds the references to defendants' purported retaliation in his objections insufficient to state a claim because they are conclusory.

## III.   ORDER

Based on the foregoing, **IT IS HEREBY ORDERED that:**

1. The Report and Recommendation [Doc. 3] is **ACCEPTED**;
2. Plaintiff's Objections [Doc. 4] are **OVERRULED**;
3. This action is **DISMISSED WITHOUT PREJUDICE** as follows:
    a. All federal-law claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).
    b. All state-law claims are dismissed for lack of jurisdiction.
4. Plaintiff's application to proceed *in forma pauperis* [Doc. 2] is **DENIED**.

**Let Judgment be entered accordingly.**

Date: November 14, 2023

                                                *s/Katherine Menendez*
                                                Katherine Menendez
                                                United States District Judge